**UNITED STATES**

v.

**Airman First Class Gregory P. DUVALL, FR429–37–6580, United States Air Force.**

**ACM 31342.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 22 July 1994.

Decided 12 April 1996.

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Captain Richard D. Desmond.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Lieutenant Colonel Mark C. Ramsey, and Captain Deborah M. Carr.

Before PEARSON, SCHREIR and MORGAN, Appellate Military Judges.

OPINION OF THE COURT

MORGAN, Judge:

Convicted contrary to his plea of use of marijuana, appellant was sentenced by a court consisting of members to a bad-conduct discharge and reduction to the grade of airman basic. He was acquitted of using LSD and distributing marijuana. At trial the government's evidence on all specifications was based, nearly exclusively, on appellant's sworn, written confession, which he attacks on two bases. First, he alleges the confession was involuntary, and second, that it was insufficiently corroborated. Finding no merit in either of these contentions, we affirm.

■ We may dispose summarily of the first assignment of error. At trial, appellant moved to suppress his confession on the basis of voluntariness, alleging that his interrogators passed themselves off as security policemen when one of them was an Air Force

Office of Special Investigations agent, that he was told he was a relatively small fish in the drug pond, that he was under pressure as a result of his Air Traffic Control training, and that he was subject to domestic problems occasioned by his wife's announced intention to leave him. In addition, he alleged that when he was told of his right to counsel, the investigator "rolled his eyes." Although the investigators disputed a number of these factual assertions, even if true, they fall far short of proof of coercion, unlawful influence or unlawful inducement. MIL.R.EVID. 304(c)(3). He was read his rights, acknowledged them, initialed the block beside each, swore to and signed his written statement. He admitted that he had been promised nothing and had been threatened with nothing. All told he spent around 1 1/2 hours in the security police building, interrupted by at least two breaks and one soda. Accordingly, we reject this assignment of error.

■ Appellant next contends that the military judge erred in admitting his confession because it was insufficiently corroborated. The specific instance of marijuana usage described by appellant was with Airman First Class (A1C) McKague at appellant's house on his back porch. A1C McKague had confided to a Senior Airman (SrA) Brents that he had smoked marijuana with appellant at the latter's residence. Although the government succeeded in getting immunity from federal prosecution for McKague, for undisclosed reasons the local district attorney declined to do so. Consequently, at an Article 39a, Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 839a) session, A1C McKague took the stand and invoked his privilege against self-incrimination.

After securing the military judge's agreement that McKague was unavailable, the government sought to admit Brents' account of McKague's statement over a hearsay objection, arguing the applicability of MIL. R. EVID. 804(b)(3) (statement against interest). The military judge ruled that McKague's extrajudicial statement to Brents provided sufficient corroboration of appellant's confession

to allow it to be considered by the members. MIL. R. EVID. 304(g). At first, he did not decide whether Brents' proferred testimony was admissible under MIL. R. EVID. 804(b)(3) but told the prosecution that he would not allow it to go before the members. He explained that under MIL. R. EVID. 104(a) the corroborative evidence did not necessarily have to meet admissibility requirements to provide a valid basis for his ruling on the admissibility of the confession itself.

But the prosecution wanted the members to consider the Brents statement and requested a ruling on its admissibility. Moreover, during a Rule for Courts–Martial (R.C.M.) 802 session, the trial counsel apparently expressed her belief that corroboration could only be supplied by evidence that was independently admissible. Back in session, the military judge appeared to reverse field, ruling that the Brents statement *was* admissible as a declaration against interest. But then he continued:

> In addition, applying a [MIL. R. EVID.] 403 balancing test, I also find that for the purpose of the confession this would amount to bolstering and/or more prejudicial than probative, since I've already admitted the confession at this time and I'm not allowing the government to bring this otherwise admissible evidence before the members. At this point, they are going to be limited to considering the confession on its face, assuming the door is not opened to other uses of this evidence.

Thus, the military judge's "net" ruling was that the corroborative statement was inadmissible, notwithstanding his agreement that what McKague said to Brents qualified under MIL. R. EVID. 804(3). As a result we must answer two questions. First, we must decide whether the quantum of evidence proferred was sufficient to corroborate appellant's confession. If so, we must next decide whether MIL. R. EVID. 104(a) permits a judge to admit a confession based upon corroborative evidence which is not itself admissible or, at least, is not thereafter given to the finder of fact.[1]

---

1. That we might struggle somewhat with the military judge's declination to allow the corroborative evidence before the court members be-

cause it "bolstered" appellant's confession does not change that practical result. The military judge decided it was inadmissible and the prose-

To appreciate the ambit of a given evidentiary rule, it is helpful first to consider what prompted it. Simply, the corroboration rule was created to "protect the administration of the criminal law against errors in convictions based upon untrue confessions alone." *Warszower v. United States,* 312 U.S. 342, 346, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941). Elaborating on this, the Supreme Court in *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954) explained:

> [I]ts foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be "involuntary" within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past....

Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made. *Id.* at 153, 75 S.Ct. at 197–98 (citations omitted). *See also United States v. Yates,* 24 M.J. 114 (C.M.A.), *cert. denied,* 484 U.S. 852, 108 S.Ct. 154, 98 L.Ed.2d 109 (1987). Recognizing the potential for mischief which might come from overreading the announcement of such a rule, the *Smith* court cautioned, "because this rule does infringe on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them." *Smith,* 348 U.S. at 153, 75 S.Ct. at 197–98.

In a further effort to understand the rule, it is worth remarking that both *Smith* and *Warszower* preceded *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda's* sweeping prophylaxis went a long way toward alleviating the principal concern of the *Smith* holding, the unreliable confession. *Smith,* and then *Miranda,* united in outspoken distrust of the coerced confession, even if that confession were not, strictly speaking, involuntary. *See Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964).

Since then, various jurisdictions have struggled with the application of the rule and the amount of proof necessary to corroborate a confession or an admission. MIL.R.EVID. 304(g) distills and synthesizes the case law on the subject, declaring "the independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted." This is consistent with the leading Supreme Court cases on the subject: *Smith,* 348 U.S. at 156, 75 S.Ct. at 199; *see also Wong Sun v. United States,* 371 U.S. 471, 503, 83 S.Ct. 407, 425, 9 L.Ed.2d 441 (1963) (evidence need not establish the offense beyond a reasonable doubt nor even by a preponderance); *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164–65, 99 L.Ed. 101 (1954) (evidence which tends to establish the trustworthiness of the confession or admission sufficient to justify a jury inference of its truth). The Court of Appeals for the Armed Forces has also carefully interpreted the corroboration rule consistent with its *raison d'etre. See, e.g., United States v. Maio,* 34 M.J. 215 (C.M.A.) (rejecting the elements or *corpus delicti* standards), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 138 (1992); *United States v. Rounds,* 30 M.J. 76 (C.M.A.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Melvin,* 26 M.J. 145 (C.M.A.1988) (the amount of evidence needed in military courts may be "very slight"); *United States v. Yeoman,* 25 M.J. 1 (C.M.A.

cution was prohibited from giving it to the triers of fact, a datum deemed crucial to the dissent, which would require not only that the corroborating evidence be admissible, but that it be admitted.

1987) (quantum of evidence needed to raise an inference of truth of admission "slight").

On that basis we have no difficulty deciding that the evidence that McKague had admitted to smoking marijuana with appellant at appellant's residence provided ample corroboration of appellant's confession, dovetailing both with respect to place and person. However, we must also decide whether McKague's statement to Brents need be independently admissible to provide that corroboration.

■ MIL.R.EVID. 304(g) not only defines the quantum of evidence necessary to corroborate a confession, but clearly assigns responsibility for deciding if a confession is sufficiently corroborated to the military judge, stating "[t]he military judge alone shall determine when adequate evidence of corroboration has been received." This connects directly into MIL.R.EVID. 104(a) which declares that in deciding questions of admissibility, the military judge "is not bound by the rules of evidence except those with respect to privilege." This would seem to answer the question, yet the dissent's insistence that corroboration must also go to the trier of fact necessitates inquiry into whether there are sound reasons to decide that the Military Rules of Evidence intended the result reached here.

Our excursion into the development of the corroboration rule helps us to decide in the affirmative. Understanding the purposes of the corroboration rule makes obvious that, logically at least, the admissibility or inadmissibility of the corroborative evidence is of no consequence to whether the appellant confessed to a crime he didn't commit. Since the purposes of the corroboration rule are not furthered by overlaying it with the additional requirement that the corroborative evidence be *independently* admissible, there is no logical reason to carve an exception to the clear meaning of MIL. R. EVID. 104(a), as the dissent urges.

The drafters of the analysis of the Military Rules of Evidence acknowledged that MIL. R. EVID. 104(a) might "substantially change military practice." Manual for Courts–Martial, United States, (MCM) Appendix 22, Rule 104 (1984). As an example, the analysis points to

the elimination of the dual requirement to first submit the question of corroboration to the military judge, and then to the court members. MIL. R. EVID. 304(g)(2) declares that the issue of corroboration belongs to the military judge. Hence, the dissent's reliance on *United States v. Seigle*, 47 C.M.R. 340 (C.M.A.1973), is misplaced. The analysis continues, "[a] significant and unresolved issue stemming from the language of Rule 104(a) is whether the rules of evidence shall be applicable to evidentiary questions involving constitutional or statutory issues such as those arising under Article 31." It concludes, however, that the Rule "strongly suggests" that even in such cases, the rules of evidence are *not* applicable. MCM, Appendix 22, Rule 104(a). Other analyses are less cautious, observing that the "prevailing practice is for judges to use such evidence." SALTZBURG, SCHINASI & SCHLAETER, MILITARY RULES OF EVIDENCE MANUAL 55 (3d Ed.1991) (citing *United States v. Matlock*, 415 U.S. 164, 175, 94 S.Ct. 988, 995, 39 L.Ed.2d 242 (1974) (inadmissible hearsay may be used by judge in deciding admissibility of search)).

Careful research into governing precedent in military practice persuades us that this is an issue of first impression. On its surface, *United States v. Faciane*, 40 M.J. 399 (C.M.A.1994), cited by the dissent, cuts hard against our position. But in that case the issue was never really addressed. More to the point, *Faciane* was a bench trial. Because the evidence which the Court of Military Appeals ruled inadmissible was not only used for corroboration, *but on the merits*, the integrity of the conviction itself was impeached. This distinction is important. In *United States v. Martindale*, 30 M.J. 172 (C.M.A.), *opinion vacated on other grounds*, 32 M.J. 33 (C.M.A.1990), the Court decided a confession was sufficiently corroborated *independently* of its decision on the admissibility of the corroborative evidence. ("Notwithstanding the fact that the confession was admissible, the question remains as to whether [the corroborative evidence was] admissible on the merits.") *Id.* at 175. This Court has assumed, without expressly holding, that inadmissible evidence *can* corroborate a confession, and that, once a confession has been

admitted into evidence, "the extent to which the prosecution produces the same or different corroborating evidence on the merits for the trier of fact is solely a question of tactics within the proponent's discretion." *United States v. Baker,* 33 M.J. 788, 791–92 n. 6 (A.F.C.M.R.1991).

There is nothing heretical in the *Baker* court's assumption. Conceived in the common law's suspicion of coerced or false confessions, the corroboration rule does not achieve constitutional or even statutory dimension. Its judicial enactment, codified for our practice in MIL.R.EVID. 304(g), preceded, and in some respects presaged, the creation of more definitive protections epitomized by *Miranda.*[2] Thus understood, it is just of the kind of evidentiary issue which can and should be decided by the military judge under MIL.R.EVID. 104(a) without reference to rules of evidence.

There is no good reason why the corroboration rule should be cloaked with a special mystique, inflicting yet another irregular verb in the already complex grammar of our evidentiary jurisprudence. Navigation of that jurisprudence is difficult enough without unnecessarily making it more so. It is nearly always simplified by reference to the touchstone admonition that "there is no gainsaying that arriving at the truth is a fundamental goal of our legal system." *United States v. Havens,* 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980). This is of a piece with the words of the *Smith* Court that exclusion of an otherwise valid confession intrudes directly on the province of the primary finders of fact. *Smith,* 348 U.S. at 153, 75 S.Ct. at 197–98; *see also Yates,* 24 M.J. at 115.

Still, we admit this question is not always susceptible of blanket resolution. *See, e.g., United States v. Martindale,* 36 M.J. 870 (N.M.C.M.R.1993), *aff'd,* 40 M.J. 348 (C.M.A.

1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 907, 130 L.Ed.2d 789 (1995). The reasons why corroborative evidence is inadmissible, or is arguably so, should be taken into account, particularly where that reason goes to the reliability of the evidence itself. *Compare James v. Illinois,* 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990) (purposes of exclusionary rule not served by allowing use of suppressed evidence to impeach testimony of non-defendant witness) *with Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (procedural safeguards should not be subverted to license an accused to commit perjury); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (impeachment using statements elicited in violation of *Miranda* permissible).

Applying that analysis here leads to a straightforward answer. The purpose of the corroboration rule is advanced by evidence, any evidence, tending to show that the confession is true, regardless of whether that evidence is itself admissible. In this case, the dispute over the admissibility of the Brents statement was not rooted in a constitutional question, nor a fundamental statutory right of the appellant, nor did it implicate the policy considerations underpinning an exclusionary rule. It was, at first, a simple question of the applicability of an exception to the hearsay rule. Accordingly, the military judge was at liberty to disregard the hearsay objection to Brents' statement when he considered the question of whether appellant's confession was sufficiently corroborated.

The findings and sentence are correct in fact and in law, the sentence is appropriate, and the same are hereby

AFFIRMED.

SCHREIER, Senior Judge, concurs.

---

2. "The obvious underpinning of the Court's decision is a deep-seated distrust of all confessions ... add[ing] up to a judicial judgment that evidence from the accused should not be used against him in any way." *Miranda,* 384 U.S. at 537–38, 86 S.Ct. at 1661 (White, J., dissenting). This suspicion is self-evidently shared by the dissent, which declares, without recitation to authority, that a jury simply cannot convict based solely on the accused's extrajudicial confession.

On the contrary, "admissions or confessions of the prisoner, when voluntarily and freely made, have always ranked high on the scale of incriminating evidence." *Brown v. Walker,* 161 U.S. 591, 596, 16 S.Ct. 644, 646–47, 40 L.Ed. 819 (1896). "When corroborated ... confessions have the highest reliability and significantly contribute to the certitude with which we may believe the accused is guilty." *Miranda,* 384 U.S. at 538, 86 S.Ct. at 1661 (White, J., dissenting).

PEARSON, Senior Judge (dissenting):

May a jury convict an accused based solely on the accused's out of court confession to the police? The majority says yes—I say no.

## FACTS

Appellant confessed to criminal investigators that he used marijuana once with a Senior Airman McKague, and swore to and signed a typed statement the investigators prepared to that effect. At trial, he moved to suppress the confession alleging it was involuntary due to police coercion and uncorroborated by independent evidence.

The military judge determined appellant's statement was voluntary and adequately corroborated. The judge found corroboration in the testimony of a former airman, Alan Brents, who testified in an evidentiary hearing that McKague once admitted smoking marijuana with appellant under the circumstances appellant described in his confession. However, the judge ruled Brents' testimony was not admissible before the court members deciding appellant's fate. Following that ruling, the prosecutor only presented one piece of evidence to prove the marijuana offense: appellant's written confession.

As expected, defense counsel moved for a finding of not guilty on the use offense at the close of the prosecution's case, arguing there was no evidence **before the members** to corroborate the confession. *See* R.C.M. 917. However, the judge replied, "Corroboration is an issue for the judge." Undaunted, defense counsel argued that corroboration was an issue like voluntariness which could be argued to the members and left for their ultimate factual determination despite a judge's preliminary ruling of admissibility. Unpersuaded, the military judge not only denied the motion but precluded defense counsel from arguing the issue to the members. (The military judge also refused to instruct on the voluntariness issue, but appellant has not asserted that as error here.)

## DISCUSSION

"An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth." MIL.R.EVID. 304(g). "The military judge alone shall determine when adequate evidence of corroboration has been received." MIL.R.EVID. 304(g)(2). "Preliminary questions concerning the ... admissibility of evidence ... shall be determined by the military judge [who] is not bound by the rules of evidence except those with respect to privileges." MIL.R.EVID. 104(a).

In theory, the majority's ruling appears to be a technically correct analysis of these rules of evidence. However, the end result of their mathematical application of the rules leaves their constitutional gyroscope off kilter.

I agree that the military judge determines "[p]reliminary questions of" admissibility. MIL.R.EVID. 104(a). However, the key word here is "preliminary." Under our system, the trier of fact has the ultimate say on whether a confession is sufficiently voluntary or corroborated to be relied upon for a conviction. In a members trial, the military should instruct on voluntariness and corroboration issues on an accused's request. *United States v. Everett*, 41 M.J. 847, 853–54 (A.F.C.M.R.1994) (voluntariness); *United States v. Seigle*, 22 U.S.C.M.A. 403, 47 C.M.R. 340, 1973 WL 14727 (1973) (corroboration); 7 WIGMORE, EVIDENCE, § 2073, at 530–31 (Chadbourn Rev.1978) (corroboration).

Consequently, I conclude the trier of fact may use a confession as evidence to support a conviction only when the evidence used for corroboration is otherwise admissible in evidence before it. *See United States v. Faciane*, 40 M.J. 399 (C.M.A.1994) (reversing conviction where appellant's confession corroborated by hearsay evidence Court finds was improperly admitted). As the Supreme Court accurately summarized in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), one of its first corroboration rule cases:

Thus the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it, while

also establishing independently the other necessary elements of the offense. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.

*Id.* at 93, 75 S.Ct. at 164–65 (citations omitted).

The majority gives no meaning to words of those great justices who created the corroboration rule. I would reverse the conviction and dismiss the charge and specification based on a failure of proof. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).